MURDOCK, Justice.
Kenneth Jakeman (“Kenneth”) appeals from-the trial court’s judgment dismissing his claims against defendants Lawrence Group Management Company, LLC (“Lawrence”), Montgomery Memorial Cemetery (“MMC”), and Judy A. Jones (“Judy”).[1] We affirm in part, reverse in part, and remand.

I. Facts and Procedural History

This is the second time this case has come before this Court. In Jakeman v. Lawrence Group Management Co., 82 So.3d 655 (Ala.2011) (“Jakeman I”), the Court succinctly summarized most of the facts and much of the key procedural history:
“Lawrence owns and operates Montgomery Memorial Cemetery, a cemetery in Montgomery (‘the cemetery’). Lawrence purchased the cemetery from Ald-erwoods[, Inc. (‘Alderwoods’),] in or around 2002. In 1967, Kenneth’s father, Ben Jakeman, purchased from MMC a ‘family plot’ in the cemetery containing 10 separate burial spaces. The plot Ben selected was specifically chosen because of its location adjacent to plots owned by Ben’s mother, Frances O’Neal. Pursuant to the terms of the purchase agreement for the family plot, burial within Ben’s plot was limited to members of either the Jakeman family or the O’Neal family.
“In August 2002, MMC allegedly mistakenly conveyed two spaces in Ben’s family plot to James A. Jones and his wife, Judy A. Jones. Following James’s death, on August 28, 2002, James was interred in one of those two spaces.
“In 2006, Kenneth learned that James had been buried in Ben’s family plot, at which time, Kenneth says, he immediately notified MMC and Ben. In response to demands by Kenneth and Ben, MMC disinterred James and moved both his body and his marker; however, James was reinterred in another space on Ben’s family plot. Ben died in 2008. At the time of Ben’s death, James’s body remained buried in one of the spaces in Ben’s plot.
“Despite the offer of an exchange of burial spaces, and based upon their purported refusal to again exhume and move James’s body and marker, in May 2010 Kenneth filed suit against Aider-woods, Lawrence, MMC, and Judy A. Jones, alleging breach of contract; trespass; negligence, ■ willfulness, and/or wantonness; the tort of outrage; and conversion. In her answer to Kenneth’s complaint, Judy asserted her own cross-claim against Alderwoods, Lawrence, and MMC, based on their alleged error in conveying to her spaces already owned by Ben and the initial erroneous burial of James, his disinterment, and his subsequent erroneous reburial in another of Ben’s spaces.
“Alderwoods subsequently filed a motion to dismiss Kenneth’s complaint based on its contentions that Kenneth lacked the requisite ‘standing’ to pursue the stated claims, that the asserted tort *1086 claims did not survive Ben’s death, and that some of the claims were barred by the expiration of the applicable limitations periods. Lawrence and MMC later joined Alderwoods’s dismissal motion.
“The trial court conducted a hearing on the motion to dismiss on July 28, 2010, at the conclusion of which the trial court announced on the record its intention to dismiss the action but to provide Kenneth 30 days to refile any viable claims. Also at the conclusion of the hearing, the trial court requested a proposed order reflecting its stated decision, which counsel for Alderwoods volunteered to provide. The record reflects that, on August 1, 2010, the trial court signed the order prepared by Alderwoods granting the joint dismissal motion, dismissing ‘all claims brought by the plaintiff against all defendants.’ The order further provided that ‘all cross claims [were] also dismissed.’
“On August 2, 2010, Judy, who was presumably aware of the contents of the trial court’s dismissal order at the time it was signed, filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., seeking to alter, amend, or vacate the order on the ground that it dismissed her cross-claim, which, she contended, was not addressed by the dismissal motion and was, therefore, not properly before the trial, court on the motion to dismiss. The clerk of the trial court subsequently entered the trial court’s previously signed dismissal order on September 17, 2010.”
82 So.3d at 656-57 (footnotes omitted).
On August 24, 2010, Kenneth filed a “Memorandum of Law” in which he sought to explain to the trial court why he believed he had standing to pursue his claims. On October- 14, 2010, Kenneth filed a Rule 59(e), Ala. R. Civ. P., motion seeking to alter, amend, or vacate the trial court’s dismissal order. Simultaneously, Kenneth filed a third amended complaint in his individual capacity and on behalf of the estate of Frances O’Neal.[2] The complaint reiterated Kenneth’s individual claim of breach of contract, it asserted a breach-of-contract claim on behalf of the estate of Frances O’Neal, and it stated a claim for declaratory and injunctive relief; the complaint did not allege any tort claims.
On September 9, 2010, Robert Jakeman, Kenneth’s brother and the personal representative of Ben Jakeman’s estate, purported to sell the rights to the Jakeman burial plot back to MMC for $4,000. He also purported to relinquish all rights thereto and waived any claims the estate of Ben Jakeman had or could have against MMC or against Lawrence.
On October 29, 2010, the trial court entered an order specifically denying only Kenneth’s motion to alter, amend, or vacate. On November 29, 2010, the trial court entered an “Amended Order” reiterating its dismissal of all of Kenneth’s claims but ordering that “all cross-claims filed by Judy ... are NOT DISMISSED and shall remain pending.” Kenneth filed a notice of appeal on that same date.
On October 7, 2011, this Court released its decision in Jakeman I. In Jakeman I, this Court noted that the trial court’s order dismissing all claims asserted by both Kenneth and Judy did not become effective until it was entered by the clerk on September 17, 2010. At that time, Judy’s previously premature motion to alter, *1087 amend, or vacate the judgment was deemed to be filed, giving the trial court 90 days to rule on her motion. The trial court ruled on her motion through its November 29, 2010, “Amended Order” which stated that Judy’s cross-claims remained pending against the other defendants. The Jakeman I Court concluded that because undisposed claims remained in the action and the trial court had not entered a Rule 54(b), Ala. R. Civ. P., order, Kenneth had appealed from a nonfinal judgment. Accordingly, this Court dismissed Kenneth’s appeal.
On February 27, 2012, Kenneth filed in the trial court a motion seeking to have the judgment against him certified as a final judgment under Rule 54(b), which the trial court granted on April 9, 2012. Kenneth again appeals.

II. Standard of Review

“Unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under some cognizable theory of law, the court should not grant a motion to dismiss a complaint. Rice v. United Ins. Co., 465 So.2d 1100 (Ala.1984). This Court, when reviewing a motion to dismiss for failure to state a claim, must resolve all doubts in favor of the plaintiff. Whitehead v. Hester, 512 So.2d 1297 (Ala.1987). In our review, we need not determine whether the plaintiff will ultimately prevail, only whether he has stated a claim on which he may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669 (Ala.1985).”
American Auto. Ins. Co. v. McDonald, 812 So.2d 309, 311 (Ala.2001).

III. Analysis

The defendants[3] grounded their motion to dismiss on three bases: (1) Kenneth’s alleged lack of “standing”; (2) the abatement of Kenneth’s tort claims; and (3) the time-bar created by the applicable statutes of limitations. As we noted in the rendition of the facts from Jakeman I, the trial court based its dismissal on a purported lack of standing. On appeal, Kenneth makes no argument in an effort to redeem the tort claims asserted by him in his original and first amended complaint. He appears to have relinquished those claims; therefore, we need not address the abatement issue. We thus turn to the other two issues listed above.

A. “Standing”

Although both sides label the first issue before us as one of “standing,” in reality it is merely one of whether Kenneth has-stated a cause of action, i.e., whether he has alleged a set of facts that, if true, will entitle him to relief under Alabama law. See Rule 12(b)(6), Ala. R. Civ P. “[O]ur courts too often have fallen into the trap of treating as an issue of ‘standing’ that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy [an] element of a cause of action.” Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 (Ala.2010). Compare, e.g., Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89, 91 n. 2 (Ala.2010) (citing Wyeth as authority for rejecting the appellant’s suggestion that a plaintiffs failure to have made a demand for possession before bringing an ejectment action presented an issue of standing). In Ex parte BAC Home Loans Servicing, LB, [Ms. 1110373, Sept. 13, 2013] — So.3d - (Ala.2013), this Court recently noted that the concept of standing *1088 was developed by the federal courts for use in public-law actions involving challenges to the actions of public officials and agencies. We quoted 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531 (3d ed.2008), for the explanation that in private-law cases such questions as whether “ ‘the present plaintiff is ... entitled to a remedy’ ” is “ ‘better addressed through private-law concepts’ ” such as “ ‘cause-of-action, real-party-in-interest, capacity, intervention, and like concepts.’ ” -So.3d at - (some emphasis omitted).
The question in the present case is whether “the present plaintiff,” i.e., Kenneth, could be “entitled to a remedy” under Alabama law. As discussed below, the question as presented in this private-law action is no more than whether the law recognizes in an heir such as Kenneth a right in the burial plots at issue so as to enable him to prove the first element in his claim of breach of contract and his claim for injunctive relief. Kenneth contends that rights in the Jakeman burial plot passed to Ben Jakeman’s heirs at law, including him, upon Ben’s death. The defendants contend that any rights in the Jakeman burial plot belong to Ben Jake-man’s estate and were therefore controlled by Robert Jakeman, the personal representative of Ben Jakeman’s estate. We agree with Kenneth.
As early as 1880, the Alabama Supreme Court recognized that “[t]he part of the burial-ground owned by [the purchaser], on his death, descended to his heirs, impressed with and subject to the uses, to which he had devoted it in his life-time.” Kingsbury v. Flowers, 65 Ala. 479, 484 (1880). In Kerlin v. Ramage, 200 Ala. 428, 429, 76 So. 360, 361 (1917), this Court recognized that “the purchaser or licensee takes a property right, which the law will recognize and protect against invasion as long as the place continues a burying ground” and that that property right “will descend to [the purchaser’s] heirs, impressed with and subject to the use to which he has devoted it in his lifetime.”
“The rule followed in Alabama is stated at 14 C.J.S. Cemeteries § 25, as follows:
“ ‘... ordinarily, the purchaser of a lot in a cemetery, although under a deed absolute in form and containing words of inheritance, is regarded as acquiring only a privilege, easement, or license to make interments in the lot purchased, exclusively of others, so long as the lot remains a cemetery,, and the fee remains in the grantor subject to the grantee’s right to the exclusive use of the lot for burial purposes. The lot owner’s title to the lot is a legal estate, and his interest is a property right entitled to protection from invasion, but only in a restricted sense does it constitute an interest in real property ....’”
Whitesell v. City of Montgomery, 355 So.2d 701, 702 (Ala.1978) (emphasis added). See also 14 Am.Jur.2d Cemeteries § 31 (2009) (stating that, “[i]n the absence of statute, a burial lot not specifically devised does not pass under a general or residuary devise but instead passes to the heirs at law of the testator as if the testator had died intestate”).
It is undisputed that Ben Jakeman’s will did not specifically devise his property interest in the Jakeman burial plot. It is also undisputed that Kenneth is an heir at law of Ben Jakeman. Therefore, under the foregoing authorities, rights in the Jakeman burial plot owned by Ben Jake-man passed to Kenneth and to any other heirs at law upon Ben Jakeman’s death.
The defendants contend that the above-quoted authorities do not apply for two reasons. First, they contend that the rule *1089 is stated only in cases involving private cemeteries, not public cemeteries such as MMC. This is incorrect; Kerlin involved a public cemetery. Moreover, none of our cases espousing the rule in the context of a private cemetery have stated that the rule applies only in such a context.
Second, the defendants cite Daniell v. Hopkins, 257 N.Y. 112, 177 N.E. 390 (1981), for the proposition that a burial plot only assumes the sacred character of a family burial ground once a family member has been interred in the plot and that, before such an interment, rights in a burial plot are devisable in the same manner as other real-property rights. The defendants contend that Kenneth did not allege that a Jakeman is buried in the Jakeman burial plot and so “it never assumed the sacred character of a family burial ground.” Defendants’ brief, p. 34. Consequently, the defendants argue that “the personal representative of Ben Jakeman’s estate has the same authority to convey or alienate the Jakeman Lot, as well as to bring any claims on behalf of the estate which Ben Jakeman had at the time of his death.” Id.
The defendants overlook the fact that the emphasis in Daniell on interment being the key to whether the executors of the estate in that case had the right to sell a burial plot following the purchaser’s death was based squarely on New York statutory law. The defendants do not cite any Alabama law that makes such a distinction. Our cases do not depend on interment as the basis for the principles cited above.
The defendants claim that Ebenezer Baptist Church, Inc. v. White, 513 So.2d 1011 (Ala.1987), makes such a distinction, but, in fact, the White Court repeated the same rules recited above concerning property rights in burial plots.
“This Court has recognized many times the sacredness of burial grounds. Hogan v. Woodward Iron Co., 263 Ala. 513, 83 So.2d 248 (1955); Kerlin v. Ramage, 200 Ala. 428, 76 So. 360 (1917). The rule in Alabama regarding a cemetery lot is that the purchaser acquires ‘only a privilege, easement, or license to make interments in the lot purchased, exclusively of others, so long as the lot remains a cemetery, and the fee remains in the grantee subject to the grantee’s right to the exclusive use of the lot for burial purposes.’ Whitesell v. City of Montgomery, 355 So.2d 701, 702 (Ala.1978). This easement or privilege, however, entitles the next of kin of the deceased to maintain an action against the owners of the fee (in this case the church or its trustees) or strangers who, without right, desecrate or invade the burial lot of another. Smith & Gaston Funeral Directors, Inc. v. Dean, 262 Ala. 600, 80 So.2d 227 (1955).”
513 So.2d at 1013.
Some of the plaintiffs in White whose relatives were buried in the church cemetery sued to prevent the church from disturbing or altering mounds, monuments, or footstones on any grave site for maintenance purposes. This Court held that those plaintiffs were entitled to “an injunction against the church and its trustees to prevent them from disturbing the grave sites.” 513 So.2d at 1014. Other plaintiffs sought an easement by prescription in their family plots by virtue of boundary markers surrounding some of the family plots, maintenance of the unused grave sites, and the erection of a tombstone with the name of the person to be buried in the future at some of the grave sites. Those plaintiffs sought an easement to prevent the church from removing the boundaries and borders around the family plots to facilitate maintenance of the cemetery and to prevent the church from selling unused sites in family plots. This Court concluded *1090 that those plaintiffs “have established an easement by prescription and that the church is not entitled to destroy boundaries or to sell unused grave sites in the family plots.” Id.
To the extent that interment of family members was a basis for the claim of the first group of plaintiffs in White and as well as for the claims of those plaintiffs seeking to establish adverse possession in White, this was so because no purchase agreements for burial plots existed between the plaintiffs and the ' church in White. If the plaintiffs had rights in the burial plots, such rights had to be established by a means other than by an agreement. Kenneth does not need to establish property rights in his father’s burial plot through other means because of Ben Jake-man’s burial-plot purchase agreement.[4]
Based on the foregoing, we conclude that Kenneth is entitled to bring a cause of action alleging breach of contract and his related claim for injunctive relief. Therefore, the trial court erred in dismissing the claim asserted by Kenneth in his individual capacity.[5]

B. Statute of Limitations

Before the trial court, the defendants contended that any breach-of-contract claim brought by Kenneth was barred by the six-year statute of limitations for such claims. See § 6-2-34(9), Ala.Code 1975. The defendants noted that Kenneth alleged that James Jones was first interred in the Jakeman burial plot on August 28, 2002, but that Kenneth did not file his action until May 25, 2010. Therefore, the defendants contended, Kenneth’s claims were time-barred.
“It is well settled that a cause of action for breach of contract accrues when the contract is breached.” Wheeler v. George, 39 So.3d 1061, 1084 (Ala.2009). Kenneth alleged that, on or around August 28, 2002, James Jones was buried in one of the burial plots purchased by Ben Jake-man. Kenneth alleged that on November 14, 2006, the cemetery disinterred Jones and then buried his remains in another burial plot also purchased by Ben Jake-man. Any alleged breaches of Ben Jake-man’s burial-plot purchase agreement occurred at the time of these burials because the purchase agreement stated that only members of the Jakeman and O’Neal families were to be buried in the burial plots purchased by Ben Jakeman. Therefore, the alleged first breach of the contract is barred by the six-year statute of limitations because it occurred on August 28, 2002, and Kenneth did not file this action until May 25, 2010, almost eight years later. The alleged second breach of the contract, however, is not barred by the statute of limitations because it occurred on November 14, 2006, approximately four *1091 years before Kenneth filed this action. Thus, the trial court’s dismissal of Kenneth’s breach-of-contract claim cannot be affirmed on the basis of the applicable statute of limitations.

C. Joinder of Necessary Parties

The defendants argue for the first time on appeal that even if Kenneth has standing to bring a breach-of-contract claim by virtue of his being an heir at law of Ben Jakeman, and even if the statute of limitations does not bar such a claim, the rights are held by all the heirs at law. Therefore, the defendants contend, the other heirs at law are indispensable parties to Kenneth’s action. The defendants contend that Kenneth’s failure to join his fellow heirs at law constitutes a separate ground for dismissal of his complaint.[6]
“[T]he failure to join an indispensable party may be raised for the,first time on appeal.” Prattville Mem’l Chapel v. Parker, 10 So.3d 546, 560 (Ala.2008). Under Rule 19, Ala. R. Civ. P., “[i]t is the plaintiff’s duty ... to join as a party anyone required to be joined.” Holland v. City of Alabaster, 566 So.2d 224, 226 (Ala.1990). Rule 19(a) provides, in part, that
“[a] person who is subject to jurisdiction of the court shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may ... leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.”
The parties appear to agree that Ben Jakeman. has at least three surviving heirs at law: Kenneth, Kenneth’s brother Robert Jakeman, and Kenneth’s mother Velma Jakeman. If this is the case, it would appear that not joining the other heirs at law in this action could subject the defendants to multiple obligations of liability. We decline, however, to decide in the first instance whether there are other indispensable parties to this litigation and whether those parties are subject to the jurisdiction of the court, given the dearth of information provided in this record on a motion to dismiss. We simply instruct the trial court to consider as a threshold issue on remand whether other parties need to be joined in this action in accordance with Rule 19.

TV. Conclusion

Based on the foregoing, we conclude that Kenneth is entitled to pursue his individual breach-of-contract claim concerning MMC’s reinterment of James Jones in one of the burial plots purchased by Ben Jake-man and that he is entitled to pursue his claim for injunctive relief. We reverse the trial court’s judgment on that basis and remand the case. On remand, we also instruct the trial court to consider whether Kenneth’s claims require the joinder of other parties pursuant to Rule 19, Ala. R. Civ. P. To the extent the trial court’s judgment dismissed other claims asserted by Kenneth on behalf of Ben Jakeman’s estate, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
MOORE, C.J., and BOLIN and BRYAN, JJ., concur.
MAIN, J., concurs in the result.

. Kenneth also originally named as a defendant Alderwoods, Inc. ("Alderwoods”), but Kenneth subsequently dismissed Alderwoods from this action because it had sold MMC to Lawrence in 2002 before the events, giving rise to the action occurred. Also, Judy is not a party to this appeal. See note 3, infra.

. In his complaint, Kenneth alleged that he is the personal representative of the estate of Frances O'Neal.

. Our references to "the defendants” in relation to the motion to dismiss do not include Judy, who is not a party to that motion and is not before us in this appeal.

. Even if an interment was necessary for the Jakeman burial plot to assume the “sacred character of a family burial ground,” as the defendants put it, we must consider whether there is any set of facts under which Kenneth might possibly prevail. It is possible a family member is buried in the Jakeman burial plot, in which case the distinction drawn by the defendants is likewise immaterial.

. In addition to his individual claim, Kenneth contends that Frances O’Neal was a third-party beneficiary of the contract at issue and that, as the personal representative of her estate, he has asserted a viable claim. We note, however, that, unlike his individual claim for relief, Kenneth did not purport to file the third amended complaint (in which this third-party-beneficiary claim is asserted for the first time) until after the trial court had entered its order of dismissal of this action, a judgment that the trial court never vacated. Although on remand Kenneth may attempt to amend his complaint to include this third-party-beneficiary claim, we see no basis on which to conclude that this claim is properly before us in this appeal.

. Of course, at this stage of the litigation, any dismissal for failure to join an indispensable party would be without prejudice as opposed to the dismissal with prejudice entered by the trial court below.